# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

DARIUS H. JAMES, individually and on behalf of similarly situated individuals,

        Plaintiff,

    vs.

TOGETHER COMPUTER, INC.,
a Delaware corporation,

        Defendant.

Case No. 3:25-cv-09578-RFL

**[~~PROPOSED~~] STIPULATED DISCOVERY ORDER**

After conferring on these matters, the Parties propose to the Court the following stipulated order ("Order") for production of electronically stored information and paper discovery.

## I.    DEFINITIONS

    **A.**    "Litigation" or "Action" refers to the case captioned above.

    **B.**    "Electronically Stored Information" or "ESI" means information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper). ESI carries the broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

    **C.**    "Document(s)" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and paper documents.

    **D.**    "Metadata" means i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File, or ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

    **E.**    "Party" or "Parties" means Plaintiff Darius H. James and Defendant Together Computer, Inc.

    **F.**    "Producing Party" means a Party that produces Documents, including non-parties.

    **G.**    "Receiving Party" means a Party to whom Documents are produced.

## II.    PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. Nothing herein expands or limits the scope of discoverable information under the Federal Rules. This ESI Order applies to ESI produced after entry of the Order. The Parties acknowledge that the production of source code, to the extent it becomes necessary in this case, is not covered by this ESI Order. The Parties shall negotiate a separate protocol and supplemental order to govern the inspection and production of source code as needed.

**III.    COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**IV.    LIAISON**

The Parties shall identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**V.    PRESERVATION**

> **A.    Preservation Obligations:**  Parties will take reasonable and proportionate steps to preserve unique ESI that is within their respective possession, custody, or control and is subject to discovery pursuant to Fed. R. Civ. P. 26(b)(1). By preserving or producing information for the purposes of this Litigation, the Parties are not conceding that such material is discoverable. In accordance with this District's ESI Guidelines and Checklist, the Parties have agreed to exchange a list of the types of ESI they believe should be preserved, including the relevant custodial and non-custodial data sources and the custodians (including their job title(s), description of duties, and employment dates). The Parties shall have a continuing obligation to take reasonable and proportional steps to identify and preserve custodial and non-custodial data sources or custodians as reasonably necessary.

> **B.    ESI Not Reasonably Accessible:**  If a Producing Party contends that any discoverable ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI) and the location of such ESI. The Parties shall negotiate in good faith concerning the production of any such ESI. The data sources not reasonably accessible

[~~PROPOSED~~] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) will be preserved but not searched, reviewed, or produced until if/when the Parties reach an agreement or the Court so orders.

Notwithstanding the foregoing, except upon a showing of good cause, the following data sources and Document types are not discoverable in this Litigation, and the Parties shall have no obligation to preserve data contained in the following forms:

1.      Back-up tapes or other long-term storage media that were created strictly for use as a data back-up or disaster recovery medium.

2.      Temporary data stored in a computer's random access memory (RAM), or other operating system files.

3.      Deleted, fragmented, unallocated space or other data only accessible by forensics.

4.      On-line access data such as temporary Internet files, history, cache, cookies, and the like.

5.      Automatically saved system versions.

6.      Routine IT maintenance data.

7.      Data remaining from systems no longer in use that is unintelligible on systems in use.

8.      Ephemeral data automatically deleted by its nature or design by the application, settings, or operating systems.

9.      Voicemail or audio recordings unless specifically identified as potentially relevant.

10.      Information contained on mobile devices unless specifically identified as potentially relevant and nonduplicative. The Parties will preserve only that information contained on a mobile device that a custodian identifies may have potentially relevant information and which is not duplicative of information that resides in a reasonably accessible data source.

## VI.      DE-DUPLICATION AND EMAIL THREADING

1.      Each Producing Party may de-duplicate ESI on a global level (across all custodians) prior to production. The basis for such de-duplication shall be the MD5 or SHA1 hash values, or some other later agreed to de-duplication method such as full text de-duplication. For generating either the MD5 or

SHA1 hash values for email, the Parties shall instruct their ESI processing vendors to take attachments into account for such hash value generation.

2.      The Parties may use email thread suppression to reduce duplicative production of email threads by producing the most inclusive email containing the thread of emails, as well as all attachments within the thread. If an email thread splits into two, or more, separate threads, then all responsive, unique threads shall be produced. If an email has an attachment and subsequent replies omit that attachment, then the original email with the attachment shall also be produced.

## VII.    IDENTIFICATION OF ESI, SEARCH, & REVIEW

1.      The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce documents responsive to discovery, consistent with Sedona Conference Principle 6 which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." Nothing in this ESI Protocol alters a Producing Party's obligation to conduct a reasonable inquiry or use a reasonable process in searching for and producing relevant information, nor does it alter a Receiving Party's right to challenge a deficient production.

2.      The Parties agree that, by May 20, 2026 for the Parties' initial sets of requests for production of Documents, and within 14 days following service of the Responding Party's respective responses and objections for all future requests for production of Documents, the Responding Party shall disclose:

a.      The names of individuals from which the Responding Party plans to collect Documents in response to the document requests. The custodians shall be identified by name, job title(s), description of duties, and employment dates.

b.      The locations and descriptions of custodial and non-custodial data sources from which the Responding Party plans to collect Documents in response to the document requests.

c.      The locations and descriptions of any other data sources likely to contain relevant or responsive information within the possession, custody, and control of the Responding Party (e.g.

email and/or mobile device providers, "cloud" storage, etc.), and for each other data source within the Responding Party's possession, custody, or control, the extent to which the Responding Party is (or is not) able to preserve information stored with the other data source.

3.        Following this disclosure, the Parties agree to meet and confer in an effort to agree upon the following: (1) custodians from whom information will be collected or produced; (2) data sources, including custodial, non-custodial, and other data sources which will be collected or produced; (3) the identity and scope of sources of documents and ESI that are responsive and available for production without the use of technology-assisted review or search terms; and (4) prioritization of categories of Documents and ESI to be collected, reviewed, and produced.

4.        **Search Methodologies**: The Parties will meet and confer to discuss the use of search terms, filters, and date ranges or the use of advanced search and retrieval technologies. Within 30 days after the Parties reach agreement on the items listed in Section VII.2, a Responding Party shall specify the technique or techniques (e.g., search terms, technology assisted review ("TAR"), artificial intelligence or machine-learning technology (collectively, "AI")) it may use to search for and cull materials it reasonably anticipates will be responsive to Requests for Production and the reason(s) for specifying such technique(s).

5.        **Search Terms**: Any Search Protocol will include a requirement for the Responding Party to provide hit reports for proposed search terms prior to utilizing the search terms to narrow the universe of Documents to be searched.  To the extent search terms are used for a given source or set of data, each Producing Party will develop its own appropriately tailored search terms to locate its relevant documents that are responsive to discovery requests.  After determining an initial set of appropriately tailored search terms, the Producing Party shall propose the search terms to the Requesting Party, with hit counts for each search term that sets forth the unique number of hits and the total hits.  The Requesting Party may request modified or additional search terms, and the Producing Party agrees to provide hit reports for any search term requested by the Requesting Party.  The Parties agree to meet and confer regarding any modifications or additions to the disclosed search terms requested by the Requesting Party, as needed.  Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of

[PROPOSED] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

irrelevant ESI) and make any necessary adjustments or corrections to its process.  If, after reviewing a Producing Party's production, a Requesting Party reasonably requests additional information regarding the validation method(s) used by the Producing Party, the Producing Party will disclose a high-level description of the quality control measures used, including, for example, any review of a random statistical sample of documents that do not hit on the search terms ("Null Set"), the sample size and sampling parameters (e.g., confidence level and margin of error), whether responsive documents were identified through such sampling, the level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by that Producing Party's methodology), if applicable, and whether any adjustments were made to the search terms or review workflow as a result.  If a Producing Party identifies responsive Document(s) within a Null Set, it shall promptly produce those Document(s).  If there remain disputes between the Parties regarding validation, the Parties shall meet and confer to resolve such disputes in good faith, including a reasonable discussion regarding the quality-control measures used and any resulting refinements to the search terms or review workflow.  In the event the Parties agree on search terms, the agreed-upon search terms shall be sufficient to comply with the Producing Party's obligations to perform a reasonable search for responsive documents as it relates to custodial ESI, subject to the good-faith validation procedure detailed herein.

6.    **TAR/AI**: If a Party intends to use TAR or AI to cull or otherwise exclude ESI from collection, review, or production, the Parties shall first meet and confer to agree on a TAR/AI protocol, including validation and disclosure of metrics.  The Parties agree to meet and confer regarding using TAR or AI on paper Documents or structured data types.  The Parties do not need to disclose the use of TAR or AI solely for the purposes of sorting, prioritizing, or summarizing Documents for review.  Nothing in this Order prevents the Parties from agreeing to using TAR, AI, or other techniques insofar as their use improves the efficacy of discovery.

7.    **Other Review Procedures**: Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's discovery requests.  The fact that a document is captured by a search pursuant to an agreed-upon protocol does not mean that such document is responsive

to a discovery request, relevant to this litigation, or will be produced. Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents determined to be relevant. Further, nothing in this Order requires the production of documents that are irrelevant, privileged, or otherwise protected from disclosure merely because the documents hit upon a search term.

8. **Production and Supplementation of ESI**: Production of responsive, non-privileged documents shall proceed on a rolling basis.

9. **Obligations**: Nothing in this Section shall be construed to diminish the Responding Party's obligations under the Federal Rules of Civil Procedure, this Order, or applicable law.

10. **Non-searchable, Likely to be Responsive Documents**: The Parties agree to promptly produce Documents or ESI known to be responsive to a discovery request or relevant to the subject matter of this Action without regard to whether it was responsive to any search methodology described herein or developed in accordance with this Order, unless Counsel specifically identifies the documents being withheld and provides a specific objection for withholding each withheld document. The Parties agree to meet and confer regarding the identification, scope, and appropriate review methodology of documents which are reasonably believed by the Producing Party to be responsive and not privileged and for which text-based search technologies are fundamentally ineffective, such as images, video, certain spreadsheets, certain hard copy documents, certain documents from noncustodial sources, or certain foreign language documents where the Parties do not have suitable search terms in such language. The scope and methodology of such review should be reasonably proportional to the needs of this case.

## VIII.  PRODUCTION FORMAT

The Parties agree to produce Documents in the formats set forth in Appendix 1 and 2 hereto.

## IX.  PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

### A.  Privilege Log.

1. Consistent with the Federal Rules of Civil Procedure, the Parties agree to serve a privilege log providing information regarding all Documents withheld or redacted under a claim of privilege and/or work product.

2.      The Parties agree that certain privileged communications or Documents need not be included on a privilege log, including:

a.      Communications regarding this Action exclusively within a law firm, or exclusively between or among law firms serving as a Party's outside counsel, as well as their employees and support staff;

b.      Attorney work product regarding this Action created by a Party's outside counsel, including their respective employees and support staff;

c.      Communications regarding this Action between and among a Party's outside counsel and their Experts or Professional Vendors, and attorney work product created by Experts or Professional Vendors; and

d.      Communications regarding this Action between or among a Party and its outside counsel.

3.      Privilege logs shall be produced within 35 days of the production from which Documents are withheld or redacted for privilege, or a reasonable time as agreed upon by the Parties.

**B.      Privilege Log Contents.**

For each Document withheld or redacted, the privilege log shall contain the following information: (i) the date of the Document; (ii) the identity of all persons who authored, signed, or otherwise prepared the Document; (iii) the identity of all persons designated as addressees or copyees, including blind copyees; (iv) a description of the contents of the Document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privileged or immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); (vi) the custodian and/or location of the Document; and (vii) for redacted Documents only, the bates numbers corresponding to the first and last page of any Document redacted. For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log shall contain some indication that the individual is an attorney (for example, an asterisk next to each attorney's name) and an indication as to whether such attorney is in-house counsel.

[PROPOSED] STIPULATED DISCOVERY ORDER, CASE NO. 3:25-CV-09578-RFL

**C.      Protocols for Logging E-mail Chains.**

Each email thread, as defined above in Section VI, that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one Document and shall be identified by the top-most e-mail in the chain that is withheld or redacted. The Parties shall not be required to log identical copies of an e-mail that is included in a chain that has been logged in accordance with this Paragraph, provided that any non-privileged portion or attachment to the email chain is produced.

**D.      Protocols for Logging "Families."**

Each member of a family (i.e., e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be identified on the log separately.

**E.      502(d) Order and Clawback Procedure.**

This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, if the Producing Party discloses information in connection with the pending Litigation that the Producing Party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

1.      This Order protects any disclosure of Protected Information, whether that disclosure is inadvertent or otherwise.

2.      Each Party is entitled to decide, in its sole discretion, the appropriate degree of care to exercise in reviewing materials for privilege. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders that disclosure of Protected Information in discovery conducted in this Litigation shall not waive any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

3.      A Producing Party must notify the Party receiving the Protected Information ("the Receiving Party"), in writing, that it has disclosed that Protected Information without intending a waiver by

the disclosure. Upon receipt of notification, the Receiving Party shall immediately take all reasonable steps required by Federal Rule of Civil Procedure 26(b)(5)(B).

4.       This Order shall be interpreted to provide the maximum protection allowed to the Disclosing Party by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order. However, if for any reason, a Court finds that this Section is inapplicable to Protected Information, then Rule 502(b) will apply in its absence.

**F.       Contesting Claim of Privilege or Work Product Protection.**

Nothing in this Order shall limit the Receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Disclosing Party's claim that Disclosed Information is protected from disclosure by the attorney-client privilege or work product doctrine. If, after undertaking an appropriate meet-and-confer process, the Parties are unable to resolve any dispute they have concerning the protection of Documents for which a claim of Disclosure has been asserted, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material. Any Protected Information submitted to the Court in connection with a challenge to the Disclosing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for in camera review.

**X.       DATA PRIVACY**

Nothing in this Order is intended to prevent either Party from complying with the requirements of any foreign country's data privacy laws. The Parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery requests.

**XI.       MISCELLANEOUS PROVISIONS**

**A.       Objections Preserved.**

Nothing in this Order shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents and ESI. Nothing in this ESI

Order is intended to, or shall be construed as, a concession about the proper temporal or subject matter scope of discovery in this action.

## B.    Technical Variances.

Recognizing that each Responding Party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Documents or ESI. No Party shall unreasonably object to any such variance.

## C.    Hard Copy Document Storage.

During the pendency of this litigation, the Parties shall make reasonable efforts to preserve the originals of all hard copy Documents as to which there may be issues of legibility of all or any part of the production copy. Each Party reserves the right to request to inspect such original Documents of the opposing Party or Parties, which request shall not be unreasonably denied. If such request to inspect is denied, the Party may seek relief from the Court.

## D.    Short Message Data.

Responsive, non-privileged electronic messages exchanged between users on communication software such as Microsoft Teams and Slack shall be produced in a searchable format that preserves the conversational relationship and presentational features of the original messages, such as emojis, images, video files, and animations. Electronic messages must not be converted to unitized files that contain less than a 24-hour period of conversation. Redactions may be applied to privileged portions of a conversation. To the extent electronic messages cannot be produced in a reasonably useable format or in accordance with the requirements set forth above, the Parties will meet and confer to address the identification, production, and production format of short-message data.

## E.    Pointer Hyperlinks.

Each Receiving Party may collectively request hyperlinked documents referenced in Documents within the Producing Party's production. The Receiving Party will make these requests by providing to the Producing Party a list of hyperlinks and corresponding Bates numbers. The requested hyperlinks must refer

to discrete stand-alone documents and not to, e.g., directories, landing pages, data sources, databases, or dynamic dashboards. The Parties agree to meet and confer in good faith to resolve any disputes concerning the timing and appropriateness of production of the requested Documents and Communications.

**F.    Non-Party Documents.**

A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that (1) the subpoenaed Non-Party should produce Documents in response to the subpoena to all Parties; and (2) the Parties to this Litigation have requested that Non-Parties produce Documents in accordance with the specifications set forth herein. If a subpoenaed Non-Party produces Documents to the Issuing Party but does not produce those Documents to other Parties, the Issuing Party shall produce such Documents to those other Parties within fourteen (14) days of receiving the Documents; provided, however, that if the Documents are to be used in a deposition scheduled to occur within such fourteen (14) day period, the Issuing Party shall produce such Documents to all other Parties no later than three (3) days prior to the deposition, or as soon as reasonably practicable if such Documents are received fewer than three (3) days before the deposition. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Third Parties to object to a subpoena. If a Non-Party production is not Bates-stamped, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix.

**G.    Lost, Destroyed, or Irretrievable ESI.**

If a Responding Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Responding Party shall explain where and when the responsive ESI was last retrievable in its original format and shall disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists.

## XII.    MODIFICATION

This Order may be modified by a stipulated order of the parties or by the Court for good cause shown.

[PROPOSED] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: April 21, 2026                    /s/ Sean A. Petterson

**McGuire Law, P.C.**
Eugene Y. Turin (SB # 342413)
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
Email: eturin@mcgpc.com

David L. Gerbie (pro hac vice)
Jordan R. Frysinger (pro hac vice)
Donald S. Cuba II (pro hac vice)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
Email: dgerbie@mcgpc.com
Email: jfrysinger@mcgpc.com
Email: dcuba@mcgpc.com

**Lieff Cabraser Heimann & Bernstein LLP**
Daniel M. Hutchinson (SB # 239548)
Anne B. Shaver (SB # 255928)
Amelia H. Haselkorn (SB # 339633)
Alison C. Fraerman (SB # 351981)
275 Battery St., 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000
Email: dhutchinson@lchb.com
Email: ashaver@lchb.com
Email: ahaselkorn@lchb.com
Email: afraerman@lchb.com

[PROPOSED] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

Rachel J. Geman (pro hac vice)
Sean A. Petterson (pro hac vice)
250 Hudson St., 8th Floor
New York, NY 10013
Tel: (212) 355-9500
Email: rgeman@lchb.com
Email: spetterson@lchb.com

*Counsel for Plaintiff and the Putative Class Members*

DATED: April 21, 2026          /s/ Joseph R. Wetzel

**Latham & Watkins LLP**
Joseph R. Wetzel (SBN 238008)
Brittany N. Lovejoy (SBN 286813)
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Tel: (415) 395-8500
Fax: (415) 395-8095
Email: joseph.wetzel@lw.com
Email: britt.lovejoy@lw.com

Sarang Damle (pro hac vice)
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Email: sy.damle@lw.com

Cory D. Struble (pro hac vice)
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1895
Email: cory.struble@lw.com

*Attorneys for Defendant Together Computer, Inc.*

[PROPOSED] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

**L.R. 5-1 SIGNATURE ATTESTATION**

As the ECF user whose user ID and password are utilized in the filing of this document, I attest under penalty of perjury that concurrence in the filing of the document has been obtained from each of the other signatories.

Date: April 21, 2026         /s/ *Joseph R. Wetzel*
                                            Joseph R. Wetzel

[PROPOSED] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED:      April 22, 2026

_____

Hon. Rita F. Lin
United States District Judge

[~~PROPOSED~~] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

**APPENDIX 1**
**PRODUCTION DELIVERY REQUIREMENTS**

**I.    GENERAL PRODUCTION PROVISIONS**

The Parties have agreed that ESI should be produced as TIFF images and in Native Format where applicable with accompanying data and image load files.

**A.    Production Components.**

Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

1.    an ASCII delimited data file (.DAT) using standard delimiters;

2.    an image load file (.OPT) that can be loaded into commercially acceptable production software (e.g. Concordance);

3.    single page black-and-white TIFF or color JPEG images, or native files with single page placeholder TIFF images, depending on the applicable production format for each type of file;

4.    and document level .TXT files for all documents containing extracted full text or OCR text.

5.    Family relationships (be that email, messaging applications, or otherwise) will be maintained in production. Attachments should be consecutively produced with their parent (in the case of hyperlinked attachments, to the extent they are produced, only one copy of the attachment will be produced with all agreed-upon metadata fields in Appendix 2, referencing the attachment to any linked emails). Objects, documents or files embedded in documents, such as OLE embedded objects (embedded MS Office files, etc.), or images, etc., embedded in RTF files, shall be extracted as separate files and treated as attachments to the parent document. Chats from programs like Slack and HipChat should be produced in families by channel or private message.

6.    If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

**B.    Production Media and Access Controls.**

Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (e.g. FTP), or on CD, DVD, flash drive or external hard drive ("Production Media").

- 17 -

Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

**C.      Data Load Files/Image Load Files.**

Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

**D.      Metadata fields.**

The Parties shall use methods of collection and processing that preserve the integrity of document metadata, and of parent-child and family group relationships such as the association between attachments and parent documents, or between embedded documents and their parents, or between documents, including, but not limited to, emails (e.g., Outlook, Gmail) or messaging or communication posts (e.g., Slack, Teams, Google Hangouts, Google Chat).  Documents containing hidden URLs, e.g., an email containing a link where the text of the link is not the URL (for example, a link with the displayed text "Please review this article" where the URL of the link, e.g., https://somesite.com/somearticle.html/ is not itself the display text of the link), should be processed such that all hidden URLs that can be extracted without manual review are included in the extracted text. For any hidden URLs that can only be extracted after a manual review, upon a reasonable and particularized request from the Receiving Party—including the corresponding Bates numbers and basis for its claim that each hyperlinked document is potentially relevant and needs to be produced independently of the search and review procedures set forth elsewhere in this protocol—a Producing Party will, to the extent feasible, conduct a manual review to process the hidden URLs so they are included in the extracted text.

The metadata fields detailed in Appendix 2 should be produced for each Document to the extent that such information is available or, in the case of metadata created during processing such as Bates numbers created at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and logged in a corresponding privilege log.

### E.    TIFFs.

Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. If the Receiving Party is not satisfied with the quality of TIFFs for particular images, it may request the Producing Party to produce those images in native format. In addition, the Parties shall take reasonable efforts to process word processing documents (e.g., MS Word) with track changes and/or comments unhidden on the TIFF image.

### F.    Text Files.

Each Document produced under this Order shall be accompanied by a Document level text file containing all of the text for that Document, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding Document. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned Documents as applicable. To ensure optimal accuracy and quality, OCR software used for extracting text from native files and for processing hard copy scanned Documents shall be set to a high quality setting, and shall include functionality to automatically deskew and autorotate images to ensure proper text orientation and alignment. The .DAT load file shall include a link to the corresponding text file.

### G.    OCR Text File.

The Parties will provide searchable OCR text of any paper or imaged Documents.

### H.    Extracted Text Files from ESI.

The Parties shall extract the text of each ESI item directly from the ESI native file, where extracted text is reasonably available. For contacts and calendars collected and/or processed after the execution date of this Order, fields should be extracted and produced as text.

### I.    OCR Text for Redacted Documents.

The Parties will provide searchable OCR text for any redacted files.

[PROPOSED] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

**J.    Bates Numbering.**

1.    Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document.

2.    The Responding Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the Requesting Party believes that a Bates number obscures the content of a Document, then the Requesting Party may request that the Document be produced with the Bates number in a different position.

**K.    Production Information.**

With each production of documents, the Producing Party shall provide the following information: (i) Production volume number; (ii) Date of the production; (iii) Bates range for the production; (iv) Other relevant information about the production (i.e., whether the production is an overlay file for a previous production).

**L.    Re-Production of Prior or Other Litigation Documents.**

Where a Requesting Party specifically requests re-production of a set of Documents produced in a prior litigation or any other proceeding, the Responding Party may re-produce such Documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the Responding Party as part of the productions set. For any such re-production in accordance with this Paragraph, the Responding Party is not obligated to re-format the prior production in accordance with the production specifications in ESI stipulation, but must provide Bates numbering and confidentiality designations specific to this litigation.

**M.    Time Zone.**

All provided metadata pertaining to dates and times will be standardized to UTC.

**N.    Confidentiality Designations.**

If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document, in the lower left-hand corner of the Document, or as

close thereto as possible while preserving the underlying image. If the Requesting Party believes that a confidentiality designation obscures the content of a Document, then the Requesting Party may request that the Document be produced with the confidentiality designation in a different position. No Party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third Party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any Party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the Responding Party, appears on the Document. For each Document that is marked confidential, a Confidentiality field will be populated with the word "Confidential" in the .dat file. Also, any Documents marked Confidential must be handled in accordance with the Protective Order entered in this case.

## II.    PRODUCTION OF "ESI"

### A.    De-NISTING and System Files.

ESI productions shall be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. De-NISTed files need not be produced. The Parties may mutually agree upon any additional file types that can be excluded from review and production. A Responding Party shall identify any additional standard, readable, and reviewable file types which have been excluded from its document review population for any production made following the date of this Order, and will utilize reasonable best efforts to do the same with respect to any productions made prior to the date of this Order.

If a Party excludes from review a standard, readable, and reviewable file type not within the industry standard, that Party must disclose such exclusion to the other Parties.

### B.    Native Files.

Certain file types, such as presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel, .csv), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in Native Format. For files produced in Native Format, the Responding Party shall provide a single-page TIFF slip-sheet with the applicable Bates stamp indicating that a native item was produced. The corresponding load (.DAT) file shall include a NativeFileLink which

provides the relative path linking information for each native file that is produced. In addition, the confidentiality designation will be indicated in the name of the native file where reasonably feasible. The Parties agree that to the extent any Party seeks production in native format of specifically identified ESI produced originally in TIFF form, the Responding Party shall respond reasonably and in good faith to any such request.

### C.    Parent-Child Relationships.

Parent-child relationships for all embedded ESI Documents (e.g., the association between an attachment and its parent email, or a spreadsheet embedded within a word processing Document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2. For example, if a Party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email.

### D.    Color Documents.

Any ESI that is not an email communication and contains color will be processed as a JPEG file at 300 DPI.  Where the Requesting Party reasonably suspects that particular email communications contain color that is necessary to determine the meaning of the communication, the Receiving Party may make reasonable and proportionate requests for particular email communications to be produced in color.  The Parties agree to meet and confer regarding such requests as appropriate. A Party making such a request shall make the request by individual Bates number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

### E.    De-duplication.

Each Responding Party shall make reasonable efforts to globally deduplicate exact duplicate Documents within that Producing Party's ESI data set across all custodial and noncustodial sources at the family level using either MD5 hash values or SHA hash values or any other agreed-upon (and disclosed) industry-standard deduplication technology. The Parties shall reach agreement on such other deduplication technology and shall reach agreement on how their deduplication tools shall identify exact duplicates of documents in a manner that is consistent with the disclosed tools and technologies a Producing Party is

using. The Parties shall reach agreement on how to identify exact duplicates of emails using industry-standard commercially available software tools or services, which may for example calculate hash values of emails based on concatenated values of agreed-upon email fields and/or hash values of attachments, or which may use any other method the Parties agree upon. Having further met and conferred in keeping with the previous sentence, the Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server, and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones.

The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue.

The names of all custodians who were either identified as custodians for purposes of collection for this matter (or otherwise known by the Producing Party to have been in possession or custody of a document prior to deduplication) will be populated in the ALL CUSTODIANS metadata field for the produced version of a document that has duplicates removed from production. The original file paths (if any exist) of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced document.

### F.    Metadata Fields and Processing.

1.    ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification consistent with the requirements provided in this Order.

2.    Hidden text. ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments. Upon request, a Responding Party will produce files with any such information in Native Format.

3.    Compressed Files and Encrypted Files. Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The Responding

Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

4.    Metadata and Coded Fields. ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the Responding Party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextPath, (h) Redaction status, and (i) Confidentiality designation. These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

## III.    DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

The Parties shall meet and confer regarding the production and format and scope of relevant structured data or aggregated or threaded data source or otherwise maintained by an application (e.g., Microsoft Teams, Slack, Microsoft Access, SharePoint, Oracle, Salesforce, ACT!, or any other messaging or proprietary databases or services) in order to ensure that any information produced is reasonably usable by the Requesting Party and that its production does not impose an undue burden on the Responding Party. The Parties will cooperate in the exchange of sufficient information concerning such databases to facilitate discussions on the production of responsive information, including available data fields/objects and schema. To the extent a Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

## IV.    PRODUCTION OF HARD COPY DOCUMENTS

In scanning paper documents, documents are to be produced as they are kept. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be

[PROPOSED] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

scanned where practicable. Pages with Post-It notes shall be scanned both with and without the Post-It, with the image of the page with the Post-It preceding the image of the page without the Post-It. Hard copy documents will be made text searchable. The Producing Party will use best efforts to unitize documents (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records), and maintain document relationships, i.e., attachment status. Original document orientation (i.e., portrait v. landscape) should be maintained.

## V.    RESPONSIVENESS, PRIVILEGE & REDACTIONS.

### A.    Responsiveness.

The Parties agree that if an attachment to an e-mail is wholly nonresponsive to the discovery requests, it will nonetheless be produced along with any other Documents in the family, provided that at least one other Document in the family is responsive.

### B.    Redactions.

Other than as permitted by this Order or the Protective Order entered in this Action, no redactions for relevance may be made within a produced document or ESI item. The Parties agree to meet and confer on a case-by-case basis if a Party believes there is a good faith basis to permit limited redaction by agreement of the Parties of highly sensitive, non-relevant information within a Document that contains other relevant information. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the type of the redaction. Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions. The Parties agree that Excel files may be redacted in their native form. For non-Excel ESI items requiring redaction, they shall be produced in TIFF format with each redaction clearly indicated. In cases where TIFF format is not practicable, such items should be produced in redacted native format, as outlined below. Any unaffected data fields shall be provided. The redaction of any material for privilege or other reason shall be governed by the applicable rules and case law regarding privilege and the provisions contained in the Protective Order entered in this action. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not

practicable (e.g., the file is a video or very large spreadsheet), the Responding Party may produce a copy of the native file with the relevant portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged, unless it also requires redaction. For each document that is redacted, a Redaction field will be populated with the word "REDACTED" in the .DAT file. Also, the Responding Party will keep a pristine original copy of the native document.

[PROPOSED] STIPULATED DISCOVERY ORDER,
CASE NO. 3:25-CV-09578-RFL

## APPENDIX 2:  ESI METADATA AND CODING FIELDS

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the Responding Party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the Requesting Party prior to processing the subject ESI for production.

| Field Name | Field Description |
| --- | --- |
| BegBates | First Bates number (production number) of an item |
| EndBates |  Last Bates number (production number) of an item<br><br>**The EndBates field should be populated for single-page items. |
| AttachName | File name of the attachment, with any attachments separated by semi-colon. |
| BegAttach/Group ID | First Bates number of family group. |
| EndAttach | Last Bates number of attachment range (i.e., Bates number of the last page of the last attachment) |
| PgCount | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| AllCustodian | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FileSize | Size (in kilobytes) of the source native file |
| SourceFilePath | The directory structure or path where the original file was stored on the Party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. |
| SourceParty | Name of entity or Party producing the item |
| RecordType | Indicates item type (*e.g.*, email, edoc, attachment) |

| Field Name | Field Description |
|---|---|
| FileType | (e.g., Outlook, Adobe Acrobat, MS Word, etc.) |
| FileExtension | Indicates file extension of the file e.g., .docx, .pptx |
| Parent Date/Sort Date | The date associated with a family's parent record, which is assigned as follows:<br><br>Emails populated with 1st occurrence: **Date Sent** or **Date Received** or **Date Last Modified**. Email attachments populated from the date above.<br>Outlook Appointments populated with 1st occurrence of **Start Date** or **Date Last Modified**.<br><br>Loose Edocs populated with 1st occurrence of **Date Last Modified** or **Date Created**. |
| DateSent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent (Date and time fields may be combined) |
| DateReceived | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| Number of Attachments | Number of attached, embedded, or grouped items |
| Importance | High Importance – indicates priority e-mail message |

- 28 -

| Field Name | Field Description |
|---|---|
| DateCreated (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| LastModDate (mm/dd/yyyy) | Date the item was last modified |
| LastModTime (hh:mm AM/PM) | Time the item was last modified |
| Date Last Printed | Date the Document was last printed. |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item) |
| Author | Creator of the Document; any value populated in the Author field of the source file metadata or document properties |
| Redacted | User-generated field that will indicate redactions. With the word "REDACTED". Otherwise, blank. |
| Confidentiality | User-generated field that will indicate confidentiality. With the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" applicable. Otherwise, blank. |
| Production Volume | The Volume name for the production (*e.g.* VOL001). |
| TextPath | Full relative path to the location of the Document-level text file. |
| NativeFileLink | Relative path for Documents provided in Native Format only.<br>**The linked file must be named per the BegBates value. |
| HiddenContent | Denotes if file contains hidden content. Format: Yes/No value. |

- 29 -

| Field Name | Field Description |
|---|---|
| THREADID | ThreadID for non-email threaded communications |